UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSUE I.C.A., | No. 1:25-cv-01542-SKO (HC) |
| Petitioner, | |
| v. | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| TODD LYONS, *Acting Director, Immigration Customs and Enforcement*; CHRISTOPHER CHESTNUT, *Warden, California City Correctional Facility*, | (Docs. 1, 5) |
| Respondents. | |

This habeas action concerns the re-detention of Petitioner Josue I.C.A., a noncitizen who was detained and released in 2021, and re-detained on October 15, 2025.[1] On November 12, 2025, Petitioner filed a Petition for Writ of Habeas Corpus (the "Petition"), (Doc. 1), and a Motion for a Temporary Restraining Order (the "Motion"), (Doc. 5), contending his re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment.[2] For the reasons explained below, the Petition for Writ of Habeas Corpus will be granted.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] The parties consented to magistrate jurisdiction, (*see* Docs. 3, 8, 9), and therefore the Petition will be adjudicated by the undersigned.

1

**I.     BACKGROUND**[3]

Petitioner entered the United States around June 24, 2021, and was encountered and detained by immigration authorities near Hidalgo, Texas on June 27, 2021. (*See* Doc. 5-1 at 4–8 ("Ex. A"); *id.* at 5; Doc. 13 at 9). After taking him into custody, immigration officials provided Petitioner with a notice to appear for removal proceedings. (*See* Ex. A; Doc. 5-1 at 9–12 ("Ex. B")). In the notice to appear, immigration officials designated him as "an alien present in the United States who has not been admitted or paroled," they did not designate him as an "arriving alien." (Ex. A at 5; Ex. B at 10). Petitioner was then released upon his own recognizance on June 29, 2021, and was enrolled in the Alternatives to Detention Program. (Doc. 13 at 2, 7, 13). At some point in time, Petitioner filed an application for asylum that, to date, remains pending. (Doc. 1 at 6).

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A., 17H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

On October 15, 2025, Petitioner was re-arrested and detained in Maryland after responding to a call to check in from Immigration and Customs Enforcement ("ICE"). (Brooks Decl. ¶ 4; Ex. B). He is now detained at California City Correctional Facility. (*Id.* at ¶ 5; Doc. 5-1 at 13–15 ("Ex. C")).

Several months before his detention, the Department of Homeland Security ("DHS") issued a policy which provides that noncitizens who entered the United States without admission or parole are "applicants for admission," and therefore subject to 8 U.S.C. § 1225(b), a statutory provision which mandates detention. *See Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025

---

[3] This section includes information from Petitioner's verified petition and the parties' other filings. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

WL 3167826, at *2 (E.D. Cal. Nov. 12, 2025).  In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals agreed with DHS's new reading of the statute.  *Id.*

On November 12, 2025, Petitioner filed the present Petition, (Doc. 1), and Motion, (Doc. 5), contending his re-detention without a bond hearing violates the Due Process Clause and that 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b), governs his status within the immigration system. He requests his release from detention or an order directing Respondents to provide him with a constitutionally adequate bond hearing.  (*See* Doc. 1-2 at 2).

The Court set a briefing schedule and provided notice to the parties that it intended to rule directly on the petition for writ of habeas corpus.  (Doc. 6); *see* Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require."); *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously).  Respondents filed an opposition, (Doc. 10), and petitioner filed a reply, (Doc. 12).

## II.     LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.  DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that the Due Process Clause bars the Government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger.  (*See* Doc. 5 at 12).  In opposition to the Petition, Respondents do not contend that the Government made an evidence-based determination that Petitioner was a danger, or a flight risk, or that he had violated his conditions of release.  Nor do they allege that Petitioner had committed a crime or that they had otherwise made a determination that Petitioner was dangerous.[4]  In fact, Respondents do not address, engage with, or even mention *any* facts specific to Petitioner in their opposition.[5]  (*See* Doc. 10).  Instead, Respondents' opposition primarily operates to urge the Court to adopt reasoning consistent with the new DHS guidance— that Petitioner's recent re-detention is mandatory under section 1225(b)(2)(A).  Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is properly understood to be authorized by section 1225(b)(2)(A) as Respondents contends, (Doc. 10 at 4), or under section 1226(a) as Petitioner contends, (*see* Docs. 5 at 11; 12 at 4).

When first presented with the Government's new interpretation of section 1225(b)(2)(A), some courts described this read of the statute as "novel."  *See, e.g.*, *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025).  But only months later, after being almost universally rejected in cases decided by district courts from different districts in the country,[6] this Court finds that these previously "novel" arguments are no longer sustainable.

---

[4] Indeed, documentation submitted by Respondents show that Respondents' records reflect Petitioner has no known criminal history.  (*See* Doc. 13 at 6–7).

[5] The opposition is void of any detail regarding the petitioner in the present case, and could have been filed in any of the numerous cases in which the Government has sought to defend an alien's detention based on their new interpretation of section 1225(b)(2)(A).

[6] *See, e.g.*, *Souza v. Robbins*, No. 1:25-CV-01597-DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025); *Garcia-Donis v. Noem*, No. 3:25-CV-03281-BTM-BJW, 2025 WL 3467385, at *1 (S.D. Cal. Dec. 3, 2025); *Pico v. Noem*, No. 25-CV-08002-JST, 2025 WL 3295382, at *3 (N.D. Cal. Nov. 26, 2025); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025); *Elias v. Knight,*, No. 1:25-CV-00594-BLW, 2025 WL 3228262, at *7 (D. Idaho Nov. 19, 2025); *Ortiz v. Bernacke*, No. 2:25-CV-01833-RFB-NJK, 2025 WL 3237291, at *3 (D. Nev. Nov. 19, 2025); *Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *6 (D. Haw.

Consistent with the overwhelming consensus rejecting Respondents' interpretation of section 1225(b)(2)(A), and adopting the persuasive reasoning of cases like *Guerrero Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025), this Court determines that section 1226(a), not section 1225(b)(2)(A), authorizes and dictates Respondents' authority to re-detain Plaintiff.

The Court next turns to the analysis of Petitioner's due process claim. Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*

---

Oct. 10, 2025); *Benitez v. Noem*, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025); *Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Moraes v. Joyce*, No. 2:25-CV-00583-JAW, 2025 WL 3459583, at *4 (D. Me. Dec. 2, 2025); *Espinosa v. Noem*, No. 1:25-CV-1396, 2025 WL 3455533, at *8 (W.D. Mich. Dec. 2, 2025); *Moncada v. Noem*, No. 6:25-CV-3354-MDH, 2025 WL 3458894, at *4 (W.D. Mo. Dec. 2, 2025); *Soumare v. Jamison*, No. CV 25-6490, 2025 WL 3461542, at *3 (E.D. Pa. Dec. 2, 2025); *Andres v. Noem*, No. CV H-25-5128, 2025 WL 3458893, at *4 (S.D. Tex. Dec. 2, 2025); *Campos-Flores v. Bondi*, No. 3:25CV797, 2025 WL 3461551, at *5 (E.D. Va. Dec. 2, 2025); *Patel v. Harden*, No. 2:25-CV-870-JES-NPM, 2025 WL 3442706, at *4 (M.D. Fla. Dec. 1, 2025); *Sutuj v. Noem*, No. 25-CV-17169-ESK, 2025 WL 3461508, at *1 (D.N.J. Dec. 1, 2025); *Edahi v. Lewis*, No. 4:25-CV-129-RGJ, 2025 WL 3466682 (W.D. Ky. Nov. 27, 2025); *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *12 (E.D.N.Y. Nov. 28, 2025); *Ruiz v. Baltazar.*, No. 1:25-CV-03642-CNS, 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025); *Gallegos Valenzuela v. Olson*, No. 25-CV-13499, 2025 WL 3296042, at *6 (N.D. Ill. Nov. 26, 2025); *Granados v. Noem*, No. SA-25-CA-01464-XR, 2025 WL 3296314, at *6 (W.D. Tex. Nov. 26, 2025); *Aguilar v. English*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, at *8 (N.D. Ind. Nov. 25, 2025); *Ambrocio v. Noem*, No. 4:25CV3226, 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025); *Lopez v. Raycraft*, No. 4:25CV2449, 2025 WL 3280344, at *4 (N.D. Ohio Nov. 25, 2025); *Quituisaca v. Bondi*, No. 6:25-CV-6527-EAW, 2025 WL 3264440, at *4 (W.D.N.Y. Nov. 24, 2025); *Rodriguez v. Hyde*, No. 25-CV-607-JJM-PAS, 2025 WL 3274606, at *2 (D.R.I. Nov. 25, 2025); *Roman v. Olson*, No. CV 25-169-DLB-CJS, 2025 WL 3268403, at *6 (E.D. Ky. Nov. 24, 2025); *S.D.B.B. v. Johnson*, No. 1:25-CV-882, 2025 WL 2845170, at *6 (M.D.N.C. Oct. 7, 2025); *Castillo v. Loza*, No. CV 25-1074 JB/JFR, 2025 WL 3251223, at *10 (D.N.M. Nov. 21, 2025); *Carlos v. Bondi*, No. 9:25-CV-00249-MJT-ZJH, 2025 WL 3252561, at *2 (E.D. Tex. Nov. 21, 2025); *Padilla v. Galovich.*, No. 25-CV-863-JDP, 2025 WL 3251446, at *3 (W.D. Wis. Nov. 21, 2025); *Mayancela v. FCI Berlin*, No. 25-CV-348-LM-TSM, 2025 WL 3215638, at *2 (D.N.H. Nov. 18, 2025); *Villa v. Normand*, No. 5:25-CV-100, 2025 WL 3188406, at *8 (S.D. Ga. Nov. 14, 2025); *Delgado Avila v. Crowley*, No. 2:25-CV-00533-MPB-MJD, 2025 WL 3171175, at *3 (S.D. Ind. Nov. 13, 2025); *Yupangui v. Hale*, No. 2:25-CV-884, 2025 WL 3207070, at *5 (D. Vt. Nov. 17, 2025); *Chilel Chilel v. Sheehan*, No. C25-4053-LTS-KEM, 2025 WL 3158617, at *2 (N.D. Iowa Nov. 12, 2025); *Martinez v. Hyde*, No. 25-CV-575-JJM-AEM, 2025 WL 3124025, at *2 (D.R.I. Nov. 7, 2025); *Godinez-Lopez v. Ladwig*, No. 2:25-CV-02962-SHL-ATC, 2025 WL 3047889, at *6 (W.D. Tenn. Oct. 31, 2025); *Ramirez Valverde v. Olson*, No. 25-CV-1502, 2025 WL 3022700, at *4 (E.D. Wis. Oct. 29, 2025); *Del Cid v. Bondi*, No. 3:25-CV-00304, 2025 WL 2985150, at *16 (W.D. Pa. Oct. 23, 2025); *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025).

1 *Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**A.   Petitioner Possesses a Protected Liberty Interest.**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Immigration officials' 2021 release of Petitioner on his own recognizance pending his immigration proceedings was similar, in that it allowed him to live in Maryland subject to supervision, but outside of custody, for over four years. And that time inherently allowed Plaintiff to form "enduring attachments of normal life." *Id.* at 482. And so, the Court concludes that Petitioner's original release and years out of custody gave rise to a constitutionally protective liberty interest, and Respondents conclusory argument that "Petitioner has not identified the source of his

6

1  liberty interest," is belied by the record, (*see* Doc. 5 at 13), and unsupported by the case law, *see,*
2  *e.g.*, *W.V.S.M. v. Bondi*, No. 1:25-CV-01489-KES-HBK (HC), 2025 WL 3236521, at *4 (E.D. Cal.
3  Nov. 19, 2025).
4      Because the Court concludes that Petitioner has a protected liberty interest in his release,
5  *see Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July
6  17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration
7  detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025
8  WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have
9  been released have a strong liberty interest), the Court must next determine what process is due
10 before the Government may terminate Petitioner's liberty.
11 **B.     The *Mathews* Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Hearing**
12     Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*
13 *Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be
14 evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

19 *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d
20 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).
21     Turning to the first factor, Petitioner has a significant private interest in remaining free from
22 detention. "Freedom from imprisonment—from government custody, detention, or other forms of
23 physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*
24 *v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for four years. His detention
25 denies him that freedom.
26     Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the
27 petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No.
28

1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172.  Here, however, there is no evidence of a risk of flight or danger nor does the Government rely on such justification in support of Petitioner's re-detention.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."  *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that before Respondents could lawfully re-detain Petitioner, he was entitled to a bond hearing.  "'[T]he root requirement' of the Due Process Clause" is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest."  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("[a]pplying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty").  And consistent with the decisions of countless other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence.  *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); *Garcia*, 2025 WL 1927596, at *5 (same); *Pinchi v. Noem,* No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); *Ortega*, 415 F. Supp. 3d at 970 (same); *Doe*, 2025 WL 691664, at *6 (same); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug.

23, 2020) (same). Accordingly, Petitioner's detention is in violation of the Due Process Clause of the Fifth Amendment.

### IV.   CONCLUSION & ORDER

Based on the foregoing, it is HEREBY ORDERED that,

1. The Petition for Writ of Habeas Corpus, (Doc. 1), is GRANTED;

2. The Motion for a Temporary Restraining Order, (Doc. 5), is DENIED AS MOOT;

3. Respondents are ORDERED to release Petitioner and return him to Maryland <u>immediately</u>;

4. Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner unless Respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified; and

5. By 5:00 p.m. on December 8, 2025, Respondents SHALL file a status report confirming Petitioner's release and return to Maryland. If by that time Respondents have not fully effectuated Petitioner's release and return, Respondents' status report SHALL set forth: (1) the steps Respondents have taken to comply with this order; (2) why Respondents have not yet completed the process of releasing and returning Petitioner; and (3) when Respondents expect Petitioner's release and return to be completed.

Upon receipt of Respondents' representations that they have fully complied with their obligations under this order to release and return Petitioner, the Court will direct the Clerk to close this case.

IT IS SO ORDERED.

Dated:   **December 5, 2025**                    /s/ *Sheila K. Oberto*
                                                  UNITED STATES MAGISTRATE JUDGE